# 22-2743

## United States Court of Appeals

*for the*

## Second Circuit

---

Robin Wheatley,

*Plaintiff-Appellant,*

– v. –

New York State United Teachers, New Hartford Employees Union,
New Hartford Central School District,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK (UTICA)

## BRIEF FOR DEFENDANTS-APPELLEES

ROBERT T. REILLY, ESQ.
Andrea Wanner, Esq., *Of Counsel*
*Attorneys for Defendants-Appellees*
800 Troy-Schenectady Road
Latham, New York 12110
(518) 213-6000
andrea.wanner@nysut.org

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................ ii

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ........................... 1

COUNTERSTATEMENT OF ISSUES PRESENTED .................................. 1

COUNTERSTATEMENT OF THE CASE ....................................... 2

    A.    New York Law Guarantees Public Employees The
           Choice Whether To Become Union Members ........................... 3

    B.    Appellant Voluntarily Joins NHEU and NYSUT and
           Authorizes Dues Deductions ........................................... 4

    C.    Appellant Resigns from NHEU and NYSUT and Her
           Dues Deductions End in Accordance with Her
           Membership Agreement ................................................. 6

    D.    Appellant Files the Instant Proceeding ........................ 7

    E.    The District Court Dismisses Appellant's Claims ...................... 7

STANDARD OF REVIEW ........................................................... 9

SUMMARY OF ARGUMENT ....................................................... 10

ARGUMENT ....................................................................... 13

    I.    APPELLANT'S PAYMENTS TO THE UNIONS
           PURSUANT TO HER VOLUNTARY MEMBERSHIP
           AGREEMENT DID NOT VIOLATE THE FIRST
           AMENDMENT .......................................................... 13

        A.    The First Amendment Does Not Preclude
               Enforcement of Voluntarily Assumed Obligations ........... 13

        B.    Union Appellees Were Not Required to Procure
               a Special "Waiver" of Appellant's First
               Amendment Rights ........................................... 16

i

C.     *Janus* Did Not Create a First Amendment Right
to Disregard Pre-*Janus* Membership Agreements .............   20

D.     Appellant's Membership Agreement is a Valid
Contract ..............................................................................   21

II.    THE DEDUCTION OF UNION DUES THAT
APPELLANT AUTHORIZED DID NOT VIOLATE
HER DUE PROCESS RIGHTS .....................................................   23

III.   APPELLANT'S SECTION 1983 CLAIMS AGAINST
THE UNIONS WERE ALSO PROPERLY DISMISSED
FOR LACK OF STATE ACTION ...............................................   25

A.     Section 1983 Claims Against Private Parties are
Viable Only if the Private Party's Conduct
Qualifies as State Action .....................................................   26

B.     Appellant's Allegations About the Unions
Did Not Establish the State Action Necessary for
a Section 1983 Claim ...........................................................   27

IV.   APPELLANT'S SECTION 1983 CLAIMS AGAINST
THE DISTRICT WERE ALSO PROPERLY
DISMISSED BECAUSE THE DISTRICT WAS
FOLLOWING THE MANDATE OF STATE LAW ..................   29

V.    THE DISTRICT COURT CORRECTLY
DISMISSED APPELLANT'S CLAIMS FOR
DECLARATORY RELIEF ...........................................................   32

CONCLUSION .................................................................................   34

CERTIFICATE OF COMPLIANCE ................................................   35

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*Abood v. Detroit Bd. Of Educ.*,
431 U.S. 209 (1977)............................................................... 4

*Annunziato v. The Gan, Inc.*,
744 F.2d 244 (2d Cir. 1984) .................................................. 26

*Belgau v. Inslee*,
975 F.3d 940 (9th Cir. 2020), *cert. denied*,
141 S. Ct. 2795 (2021).................................................. *passim*

*Bennett v. AFSCME Council 31*,
991 F.3d 724 (7th Cir. 2021),
*cert. denied*, 142 S. Ct 424 (2021)................................. 10, 16, 18

*Blum v. Yaretsky*,
457 U.S. 991 (1982)........................................................ 26, 29

*Brady v. United States*,
397 U.S. 732 (1970)............................................................. 20

*Buckley v. Valeo*,
424 U.S. 1 (1976)................................................................. 14

*Chicago Teachers Union v. Hudson*,
475 U.S. 292 (1996)................................................... 25, 32, 33

*Ciambriello v. Cnty. of Nassau*,
292 F.3d 307 (2d Cir. 2002) .................................................. 28

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)............................................................... 32

*Cohen v. Cowles Media Co.*,
501 U.S. 663 (1991).......................................................... 11, 15

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999)............................................................. 17

*Coltec Indus. v. Hobgood*,
280 F.3d 262 (3d Cir. 2002) .................................................. 21

*Crouthamel v. Walla Walla Pub. Sch.*,
    535 F. Supp. 3d 1025 (E.D. Wash. 2021),
    *appeal filed*, No. 21-35387 (May 20, 2021) .......................................... 11, 24

*Curtis Publ'g Co. v. Butts*,
    388 U.S. 130 (1967)................................................................. 17

*Davis v. FEC,*
    554 U.S. 724 (2008)................................................................. 32

*D.H. Overmyer Co. Inc. of Ohio v. Frick Co.*,
    405 U.S. 174 (1972)................................................................. 19

*Dingle v. Stevenson*,
    840 F.3d 171 (4th Cir. 2016) ............................................... 20, 21

*Edmonson v. Leesville Concrete Co.*,
    500 U.S. 614 (1991)................................................................. 29

*Erie Telecomms., Inc. v. City of Erie*,
    853 F.2d 1084 (3d Cir. 1988) ................................................... 19

*Fischer v. Governor of N.J.*,
    842 F. App'x 74 (3d Cir. 2021), *cert. denied sub nom* ........................ 10, 21

*Fischer v. Murphy*,
    142 S. Ct. 426 (2021)........................................................... 10, 21

*Fisk v. Inslee*,
    2017 WL 4619223 (W.D. Wash. Oct. 16, 2017),
    *aff'd*, 759 F.App'x 632 (9th Cir. 2019) ............................................ 6, 14, 15

*Freedom Holdings, Inc. v. Spitzer*,
    408 F.3d 112 (2d Cir. 2005) .................................................... 9

*Fuentes v. Shevin*,
    407 U.S. 67 (1972)................................................................... 19

*Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*,
    570 F.3d 811 (7th Cir. 2009) ................................................... 28

*Hendrickson v. AFSCME Council 18*,
    992 F.3d 950 (10th Cir. 2021),
    *cert. denied*, 142 S. Ct. 423 (2021).......................................... 10, 15, 17, 21

*Hoekman v. Educ. Minnesota*,
    41 F.4th 969 (8th Cir. 2022) ................................................... 11, 28

*Hollander v. Copacabana Nightclub*,
  624 F.3d 30 (2d Cir. 2010) ..................................................... 27

*Janus v. AFSCME, Council 31*,
  138 S. Ct. 2448 (2018).............................................. *passim*

*Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938) ............................................ 17

*Kidwell v. Transp. Communications Int'l Union*,
  946 F.2d 283 (4th Cir. 1991) .................................................. 14, 33

*Knox v. SEIU Local 1000*,
  567 U.S. 298 (2012)................................................................ 17

*Kumpf v. New York State United Tchrs.*,
  __ F. Supp. 3d __, 2022 WL 17155847
  (N.D.N.Y. Nov. 22, 2022) ...................................................... *passim*

*LaSpina v. SEIU Pennsylvania State Council*,
  985 F.3d 278 (3d Cir. 2021) ................................................... 21

*Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v.
  Town Bd. of Huntington*,
  31 F.3d 1191 (2d Cir. 1994) .................................................. 23

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982)............................................................ 26, 27

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019).......................................................... 26

*Marquez v. Screen Actors Guild, Inc.*,
  525 U.S. 33 (1998)................................................................ 31

*Marsh v. AFSCME Local 3299*,
  2020 WL 4339880 (E.D. Cal. July 28, 2020), *subsequent order*,
  2021 WL 164443 (E.D. Cal. Jan. 19, 2021), *appeal filed*,
  No. 21-15309 (Feb. 22, 2021) ............................................... 11, 24

*McBeth v. Himes*,
  598 F.3d 708 (10th Cir. 2010) ............................................... 23

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*,
  24 F.3d 519 (3d Cir. 1994) ................................................... 29

*McMenemy v. City of Rochester*,
  241 F.2d 279 (2d Cir. 2001) ................................................. 23

*Messman v. Helmke,*
    133 F.3d 1042 (7th Cir. 1998) ............................................... 28

*Molina v. Pa. Soc. Serv. Union,*
    __ F. Supp. 3d __, 2020 WL 2306650 (M.D. Pa. May 8, 2020)............ 24

*Monell v. Department of Social Services of the City of New York,*
    436 U.S. 658 (1978).................................................... 12, 30

*Nat'l Abortion Ctr. for Med. Progress,*
    685 Fed. App'x 623 (9th Cir. 2017) ...................................... 18

*NLRB v. Granite State Joint Bd. Textile Workers Union,*
    409 U.S. 213 (1972).................................................... 15, 32

*NLRB. v. U.S. Postal Serv.,*
    827 F.2d 548 (9th Cir. 1987) .............................................. 14

*NLRB v. U.S. Postal Serv.,*
    833 F.2d 1195 (6th Cir. 1987) ............................................. 14

*NXIVM Corp. v. Ross Inst.,*
    352 F.3d 471 (2nd Cir. 2004) .............................................. 9

*N.Y. Times Co. v. Sullivan,*
    376 U.S. 254 (1964)...................................................... 17

*Ochoa v. Pub. Consulting Grp., Inc.,*
    48 F.4th 1102 (9th Cir. 2022) ............................................. 25

*Oliver v. SEIU Local 668,*
    415 F. Supp. 3d 602, 612 (E.D. Pa. 2019), *aff'd on other grounds,*
    830 Fed. App'x 76 (3d Cir. 2020) ......................................... 11

*Oliver v. Serv. Emps. Int'l Union Local 668,*
    830 F. App'x 76 (3d Cir. 2020) ........................................ 10, 14

*Pattern Makers v. NLRB,*
    473 U. S. 95 (1985)...................................................... 31

*Perricone v. Perricone,*
    292 Conn. 187 (2009) .................................................... 18

*Ramon Baro v. Lake Cnty. Fed'n of Tchrs. Loc. 504, IFT-AFT/AFL-CIO,*
    57 F.4th 582 (7th Cir. 2023) .............................................. 10

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973)..................................................................... 20

*Seidemann v. Prof'l Staff Congress Local 2334*,
  432 F. Supp. 3d 367 (S.D.N.Y. 2020), *aff'd*,
  842 Fed. App'x 655 (2d Cir. 2021), *cert. denied*,
  142 S. Ct. 104 (2021)................................................................. 4

*Smith v. Serv. Emps. Int'l Union, Loc. 668*,
  566 F. Supp. 3d 251 (M.D. Pa. 2021)...................................... 33

*Todd v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 5*,
  571 F. Supp. 3d 1019 (D. Minn. 2021) ................................ 11, 28

*Tulsa Professional Collection Services, Inc. v. Pope*,
  485 U.S. 478 (1988) (Br. 21-22) ............................................ 28

*Ulrich v. City and Cnty. of S.F.*,
  308 F.3d 968 (9th Cir. 2002) ................................................. 24

*United Steelworkers of Am., Local 4671 (Nat'l Oil Well, Inc.)*,
  302 NLRB 367 (1991).......................................................... 14

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021)............................................................ 33

*Vives v. City of New York*,
  524 F.3d 346 (2d Cir. 2008) ............................................. 12, 30

*Wagner v. Univ. of Wash.*,
  2020 WL 5520947 (W.D. Wash. Sept. 11, 2020), *aff'd*,
  2022 WL 1658245 (9th Cir. May 25, 2022)......................... 11, 24

*Wholean v. CSEA SEIU Loc. 2001*,
  955 F.3d 332 (2d Cir. 2020) ................................................... 9

*Wright v. Serv. Emp. Int'l. Union Loc. 503*,
  48 F.4th 1122 (9th Cir. 2022) ............................................ 11, 28

**Other Authorities:**

Bureau of Labor Statistics, Economic News Release,
  Union Members Summary (January 19, 2022),
  available at https://www.bls.gov/news.release/union2.nr0.htm ............ 25

Fed. R. Civ. Pro. 12(b)(1) ...................................................... 9

Fed. R. Civ. Pro. 12(b)(6) ...................................................... 9

N.Y. Civ. Serv. Law § 200.................................................... 3

N.Y. Civ. Serv. Law § 201(2)(a) ......................................... 3

N.Y. Civ. Serv. Law § 202.................................................... 3

N.Y. Civ. Serv. Law § 203.................................................... 3

N.Y. Civ. Serv. Law § 208(1)(b) ............................... 3, 9, 12, 30

N.Y. Civ. Serv. Law § 208(1)(b)(i) ..................................... 3

N.Y. Civ. Serv. Law § 208(3)(b) ......................................... 4

N.Y. Civ. Serv. Law § 209-a ............................................... 3

N.Y. Gen. Oblig. Law § 5-1103 (2012)............................ 11, 22

2018 Sess. Law News of N.Y. Ch. 59 (S. 7509-C) ............... 30

5 U.S.C. § 7115(a) ............................................................... 5

5 U.S.C. § 7115(b) ............................................................... 5

29 U.S.C. § 186(c)(4) .......................................................... 5

39 U.S.C. § 1205 ................................................................. 5

42 U.S.C § 1983 ........................................................... *passim*

45 U.S.C. § 152 ................................................................... 5

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Defendants-Appellees New Hartford Employees Union ("NHEU") and New York State United Teachers ("NYSUT") have no parent corporations.

## COUNTERSTATEMENT OF ISSUES PRESENTED

1. Whether a public employee who voluntarily agreed to pay union dues in exchange for the rights and benefits of membership suffered a violation of her First Amendment rights when she paid those agreed-upon dues.

2. Whether a public employee who voluntarily authorized the deduction of union dues from her paychecks suffered a violation of her due process rights when her employer made the deductions she authorized.

3. Whether a union's private membership agreement with a union member is state action for purposes of a 42 U.S.C § 1983 claim.

4. Whether a school district's ministerial deduction of authorized union dues, as required by state law, is a municipal policy for purposes of a 42 U.S.C. § 1983 claim.

5. Whether Appellant's claim for declaratory relief was properly dismissed where she had no standing to seek prospective relief and her claims for retrospective relief were meritless.

# COUNTERSTATEMENT OF THE CASE

Appellant Robin Wheatley ("Appellant") is employed by Appellee New Hartford Central School District ("District") and a former member and union official of Appellees New Hartford Employees' Union ("NHEU") and New York State United Teachers ("NYSUT") (collectively "Unions"). In 2018, Appellant signed a membership and dues authorization agreement ("Membership Agreement") to voluntarily join the NHEU and NYSUT and authorize the District to deduct union dues from her paycheck. The Membership Agreement expressly stated that Appellant's decision to authorize dues deductions was voluntary and not a condition of her employment. A.27; 39. The Membership Agreement also expressly provided that dues deductions would continue unless Appellant revoked her authorization within a specified annual window period. *Id*. In exchange for her agreement, Appellant received rights and benefits attendant to union membership, such as the right to vote in union elections, run for union office, and represent the union on collective bargaining committees. Appellant subsequently resigned her union membership, and her dues deductions ended a few months later in accordance with her agreement. Now, Appellant contends her First Amendment and due process rights were violated when she paid the money she agreed to pay. The district court correctly dismissed her claims.

**A.    New York Law Guarantees Public Employees The Choice Whether To Become Union Members**

The New York Public Employees Fair Employment Act, N.Y. Civ. Serv. Law §§ 200, et seq. ("Taylor Law"), permits public employees in appropriate bargaining units to democratically choose whether their unit should be represented by a union for purposes of collective bargaining.  N.Y. Civ. Serv. Law §§ 202 and 203.  The Taylor Law guarantees public employees the right to choose whether to join the union as members.  N.Y. Civ. Serv. Law § 202.  The Taylor Law prohibits any union or public employer from interfering with, restraining or coercing public employees in the exercise of their rights.  N.Y. Civ. Serv. Law § 209-a.

Under the Taylor Law, individual employees who voluntarily become union members may choose to pay their union dues through payroll deduction by signing written dues deduction authorizations.    N.Y. Civ. Serv. Law § 208(1)(b). Membership dues deduction is the "obligation or practice of a government to deduct from the salary of a public employee *with his consent* an amount for the payment of his membership dues in an employee organization."    N.Y. Civ. Serv. Law § 201(2)(a) (emphasis added).  Such dues deduction authorizations remain in effect until they are revoked by the individual employee "in accordance with the terms of the signed authorization."  N.Y. Civ. Serv. Law § 208(1)(b)(i).

Prior to the Supreme Court's decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), public employers could require employees who chose not to

become union members to pay a fee to the union to cover their fair share of the costs of the union's collective bargaining and grievance adjustment on behalf of the unit. N.Y. Civ. Serv. Law § 208(3)(b). *Janus* overturned *Abood v. Detroit Bd. Of Educ.*, 431 U.S. 209 (1977), and held that requiring public employees to pay fair-share fees violates the First Amendment. Upon issuance of the *Janus* decision, the Unions immediately stopped requesting or accepting fair-share fees. *See Seidemann v. Prof'l Staff Congress Local 2334*, 432 F. Supp. 3d 367, 378 (S.D.N.Y. 2020) (acknowledging NYSUT and affiliated unions' commitment to not seek or accept fair share fees following Janus), *aff'd*, 842 Fed. App'x 655, 657-58 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 104 (2021).

**B.    Appellant Voluntarily Joins NHEU and NYSUT and Authorizes Dues Deductions**

Appellant works for the District and is a member of a bargaining unit that includes "School Related Personnel" represented by the NHEU. A.9, ¶ 11. Appellant joined and was a member of the NHEU, and by extension NYSUT, from 2005 when she began employment with the District until March 22, 2021, when she resigned membership. A.9, ¶¶ 11-13; A.11, ¶¶ 21-22. On April 12, 2018, Appellant signed the operative Membership Agreement, which provided:

> YES! I request and accept membership in [the NHEU] the local organization named above, the New York State United Teachers (NYSUT) and its national affiliates, American Federation of Teachers (AFT), the National Education Association (NEA), and American Federation

of Labor-Congress of Industrial Organizations (AFL-CIO), where applicable.

I recognize the need for a strong union and believe everyone represented by a union should pay their fair share to support the union's activities. I hereby request and voluntarily authorize my employer to deduct an amount equal to the regular monthly dues uniformly applicable to members of the local organization named above and remit that amount to the local. I understand that this authorization and assignment is not a condition of my employment and shall remain in effect, regardless of whether I am or remain a member of the union, for a period of one year from the date of this authorization and shall automatically renew from year to year unless I revoke this authorization by sending a written, signed notice of revocation via U.S. mail to the union between the window period of Aug. 1-31 or another window period specified in a collective bargaining agreement.

A.27.

The provision in Appellant's Membership Agreement stating that dues deductions will be irrevocable for one-year periods incorporates the same terms Congress has authorized for federal employees, postal employees, and employees covered by the National Labor Relations Act and the Railway Labor Act.[1] A one-year irrevocability period "provides [the union] with financial stability by ensuring a predictable revenue stream," thereby enabling the union to "make long-term financial commitments without the possibility of a sudden loss of revenue," and also

---

[1] *See* 5 U.S.C. § 7115(a)–(b); 39 U.S.C. § 1205; 29 U.S.C. § 186(c)(4); 45 U.S.C. § 152, Eleventh (b).

prevents individuals "from gaming the [u]nion's system of governance" by "pay[ing] dues for only a month to become eligible to vote in a [u]nion officer election" or accessing a members-only benefit "and then reneg[ing] on all future financial contributions." *Fisk v. Inslee*, 2017 WL 4619223, at *3 (W.D. Wash. Oct. 16, 2017), *aff'd*, 759 F.App'x 632 (9th Cir. 2019).

## C.  Appellant Resigns from NHEU and NYSUT and Her Dues Deductions End in Accordance with Her Membership Agreement

Appellant resigned membership from the NHEU and NYSUT by letters sent to NYSUT and the District in March 2021.  A.11, ¶ 22.  NHEU President Vincent Nesci informed Appellant that "dues will continue to be withheld until August 1, 2021. You will have a window period to request dues to terminate. That window period is from August 1, 2021 thru August 31, 2021." A.11, ¶ 23; *see also* A.11, ¶¶ 24-25; A.13, ¶ 40.

Appellant sent the required notice to the NHEU that she was revoking her authorization for union dues to be deducted from her wages during the August 1-31, 2021 window period, and the deductions ended in accordance with her Membership Agreement.  A.14; 36.  Because Appellant was not paid during the summer months, she did not have any deductions made after June 2021.  A.11, ¶ 25; A.49; *see also* D.Ct. ECF 17-3 at 4–5 (¶¶ 16–22).

**D.  Appellant Files the Instant Proceeding**

Appellant commenced this action on September 10, 2021, after her dues deductions had ended, alleging two claims for relief under 42 U.S.C. § 1983 against the Unions and the District.  Count One alleged that post-resignation deductions of agreed-upon payments to the NHEU and NYSUT from Appellant's pay violated her First Amendment rights to freedom of speech and association.  A.14-16, ¶¶ 42-57.  Count Two alleged that post-resignation deductions violated Appellant's Fourteenth Amendment right to due process.  A.16-18, ¶¶ 58-66.  Appellant sought prospective injunctive and declaratory relief.  A.8, ¶¶ 1; 6; A.18-19, ¶¶ A-B.  Appellant further sought damages equal to the amount of dues deducted from her wages after her resignation.  A.8 ¶ 6; A.19, ¶¶ C-D.

**E.  The District Court Dismisses Appellant's Claims**

The Unions and the District moved to dismiss Appellant's claims pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6), and the district court granted the motions.  A.28-52.

The district court held that it lacked subject matter jurisdiction over Appellant's claims for "prospective declaratory and injunctive relief" because the District already had ceased dues deductions following Appellant's revocation of membership dues deductions during the annual window period as set forth in her Membership Agreement.  A.36.

The district court held that Appellant's remaining claims against the Unions failed on the merits because Appellant "ha[d] not plausibly alleged that [the Unions] violated her constitutional rights by abiding by the authorization that she voluntarily provided to them in her Membership Agreement." A.39. The district court rejected Appellant's arguments that *Janus* supports her constitutional claims, explaining that the plaintiff in *Janus* was a nonmember who was required to support a union, not a member such as Appellant who voluntarily joined a union and affirmatively agreed to pay dues. A.38. The district court relied on *Belgau v. Inslee*, 975 F.3d 940, 944 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2795 (2021), which held that "[t]he Supreme Court's decision in Janus … was a gamechanger in the world of unions and public employment" … "[b]ut the world did not change for [plaintiffs] and others who affirmatively signed up to be union members." A.38.

The district court held, "[a]lternatively," that Appellant failed to state a viable claim for relief against the Unions pursuant to 42 U.S.C. § 1983 because the Unions "are not state actors within the meaning of § 1983." A.41. The district court agreed with the reasoning of *Belgau* that because the government's "only role was to permit the private choice of [Appellant] to join [the] Unions, agree to pay monthly dues, and authorize [the] District to deduct those monthly dues from her wages" (A.43), the Unions' conduct did not qualify as state action. A.42-45.

The district court also held that the Appellant failed to state a viable 42 U.S.C. § 1983 claim against the District because "it was not a policy of [the] District, but rather state law, that required [the] District to deduct union membership dues from [Appellant's] wages until [Appellant] revoked that authorization 'in accordance with the terms of the signed authorization.'" A.49 (quoting N.Y. Civ. Serv. Law § 208(1)(b)). Moreover, in continuing to deduct dues until Appellant's window period, the "district was merely honoring [Appellant's] self-imposed, voluntary authorization that [the] District deduct union dues from her wages unless she revoked said authorization during the annual window period." A.51.

Accordingly, the district court entered judgment for the Unions and the District. A.53.

## STANDARD OF REVIEW

The district court's dismissal of Appellant's claims under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) is subject to de novo review "using the same standard employed by the district court." *Wholean v. CSEA SEIU Loc. 2001*, 955 F.3d 332, 334 (2d Cir. 2020). This Court "may affirm on any ground supported by the record." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *NXIVM Corp. v. Ross Inst.*, 352 F.3d 471, 476 (2nd Cir. 2004)).

## SUMMARY OF ARGUMENT

Appellant voluntarily became a union member and affirmatively agreed to pay membership dues through payroll deduction for a set period of time. In exchange, she received the rights and benefits of membership. Every court to consider Appellant's theory that the First Amendment prohibits the enforcement of such agreements—including four different Circuit Courts—has rejected it.[2] These courts uniformly and correctly have held that *Janus* did not create a First Amendment right for voluntary union members to renege on their contractual obligations to pay dues, impose a heightened "waiver" requirement for union membership agreements, or invalidate pre-*Janus* membership agreements.

*Janus* addressed the narrow issue of whether public employees who never agreed to join a union could be compelled by the government to pay fair-share fees to a union as a condition of employment. The contractual relationship between a union and its voluntary members remains intact after *Janus*. The First Amendment "does not confer … a constitutional right to disregard promises that would otherwise

---

[2] *See Ramon Baro v. Lake Cnty. Fed'n of Tchrs. Loc. 504, IFT-AFT/AFL-CIO*, 57 F.4th 582 (7th Cir. 2023)*; Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 969 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 423 (2021); *Fischer v. Governor of N.J.*, 842 F. App'x 741, 752-53 & n. 18 (3d Cir. 2021), *cert. denied sub nom. Fischer v. Murphy*, 142 S. Ct. 426 (2021); *Bennett v. AFSCME Council 31*, 991 F.3d 724, 730-33 (7th Cir. 2021), *cert. denied*, 142 S. Ct 424 (2021); *Oliver v. Serv. Emps. Int'l Union Local 668*, 830 F. App'x 76, 80 (3d Cir. 2020); *Belgau v. Inslee*, 975 F.3d 940, 950-51 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2795 (2021); *see also Kumpf v. New York State United Tchrs.*, __ F. Supp. 3d __, 2022 WL 17155847, at *9-10 (N.D.N.Y. Nov. 22, 2022) (citing additional cases that "universally" reject Appellant's argument).

be enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). Moreover, contrary to Appellant's contention, New York law did not require that her Membership Agreement must be supported by new consideration. *See* N.Y. Gen. Oblig. Law § 5-1103 (2012).

Likewise, every court to consider Appellant's due process theory has rejected it.[3] Appellant voluntarily requested that the District deduct union dues from her paycheck, so she was not "deprived" of any liberty or property interest that could serve as the basis for a Fourteenth Amendment procedural due process claim.

The dismissal of Appellant's claims against the Unions should also be affirmed on the independently sufficient ground that Union's alleged conduct does not qualify as "state action" for purposes of a 42 U.S.C § 1983 claim. The Unions are private parties and, as every court to consider this issue has concluded, public employers' ministerial deduction of union dues authorized by employees is not sufficient to turn unions into state actors.[4] Disputes between unions and their

---

[3] *See Wagner v. Univ. of Wash.*, 2020 WL 5520947, at *5 (W.D. Wash. Sept. 11, 2020), *aff'd*, 2022 WL 1658245, at *1 (9th Cir. May 25, 2022); *Crouthamel v. Walla Walla Pub. Sch.*, 535 F. Supp. 3d 1025, 1035-36 (E.D. Wash. 2021), *appeal filed*, No. 21-35387 (May 20, 2021); *Marsh v. AFSCME Local 3299*, 2020 WL 4339880, at *10 (E.D. Cal. July 28, 2020), *subsequent order*, 2021 WL 164443, at *6 (E.D. Cal. Jan. 19, 2021), *appeal filed*, No. 21-15309 (Feb. 22, 2021); *Kumpf*, 2022 WL 17155847, at *14 (N.D.N.Y. Nov. 22, 2022).

[4] *See Belgau*, 975 F.3d at 947–48 & n.2; *Wright v. Serv. Emp. Int'l. Union Loc. 503*, 48 F.4th 1122, 1122–25 & n.6 (9th Cir. 2022); *Hoekman v. Educ. Minnesota*, 41 F.4th 969, 977-78 (8th Cir. 2022); *Oliver v. SEIU Local 668*, 415 F. Supp. 3d 602, 612 (E.D. Pa. 2019), *aff'd on other grounds*, 830 Fed. App'x 76 (3d Cir. 2020); *Kumpf*, 2022 WL 17155847, at *7-8; *Todd v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 5*, 571 F. Supp. 3d 1019, 1030 (D. Minn. 2021).

members about the terms of dues authorizations must be pursued under state law, not in federal court.

The dismissal of Appellant's claims against the District should also be affirmed on the independently sufficient ground that the District's deduction of the membership dues she authorized was not a municipal policy within the meaning of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The Taylor Law required the District to continue to deduct the dues until Appellant's authorization was revoked "in accordance with the terms of the signed authorization." N.Y. Civ. Serv. Law § 208(1)(b). Local governments cannot be held liable under Section 1983 for complying with the mandate of state law. *See Vives v. City of New York*, 524 F.3d 346, 353 & n.4 (2d Cir. 2008). In any event, a local government policy of deducting dues pursuant to employees' own voluntary authorizations does not violate the First Amendment or Due Process Clause.

Finally, the district court correctly dismissed Appellant's claims for declaratory relief. Appellant lacks standing to pursue prospective relief because Appellant's financial obligations pursuant to her Membership Agreement concluded prior to the filing of this lawsuit. To the extent Appellant asserts "retrospective claims for declaratory relief" (Br. 12), those claims are meritless for all the reasons stated above.

**ARGUMENT**

**I.  APPELLANT'S PAYMENTS TO THE UNIONS PURSUANT TO HER VOLUNTARY MEMBERSHIP AGREEMENT DID NOT VIOLATE THE FIRST AMENDMENT**

Appellant alleged in Count I of her Complaint that her First Amendment rights were violated when the District deducted union dues from her paychecks after her resignation from membership.  A.14-16.  But Appellant voluntarily joined the NHEU and NYSUT and agreed to pay dues through payroll deduction for a set time period in exchange for the rights and benefits of union membership.  Deductions authorized by Appellant's own Membership Agreement did not violate her First Amendment rights.

**A.  The First Amendment Does Not Preclude Enforcement of Voluntarily Assumed Obligations**

The First Amendment generally prohibits the government from compelling an individual to subsidize another private party's expressive activities.  *See, e.g., Janus*, 138 S. Ct. at 2464 ("*compelled* subsidization of private speech …impinges on First Amendment rights) (emphasis added).  Appellant, however, does not claim that she was compelled by the government to join the unions or to agree to pay membership dues.  To the contrary, Appellant was a voluntary union member, and the dues she paid were authorized by her Membership Agreement.  Appellant's choice to join the Unions and agree to pay dues was not government-compelled speech or association but Appellant's own voluntary, expressive activity protected by the First

Amendment.  *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 16 (1976); *see also Kidwell v. Transp. Communications Int'l Union*, 946 F.2d 283. 292-93 (4th Cir. 1991) ("Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced.  The employee is a union member voluntarily."); *Oliver v. Serv. Emps. Int'l Union Local 668*, 830 F. App'x 76, 79 n. 3 (3d Cir. 2020) ("[B]y signing the union membership card, Oliver was exercising her free association right to join the Union, effectively waiving her right to not support the Union.  She cannot simultaneously choose to both join the Union and not pay union dues.").

Appellant's Membership Agreement expressly created financial obligations that lasted for a set period of time before such obligations could be canceled during an annual window period, similar to provisions that have long been held to be lawful and enforceable.  *See, e.g., NLRB. v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987); *NLRB v. U.S. Postal Serv.*, 833 F.2d 1195, 1196 (6th Cir. 1987); *United Steelworkers of Am., Local 4671 (Nat'l Oil Well, Inc.)*, 302 NLRB 367, 368 (1991); *see also Fisk v. Inslee*, 759 F. App'x 632, 633-34 (9th Cir. 2019) (acknowledging enforceability of "temporarily irrevocable payment authorizations in many consumer contracts").  These decisions reflect the general principle that individuals have the right to resign from a voluntary association "as [they see] fit *subject of course to any financial obligations due and owing the group with which [they were]*

*associated.*" *NLRB v. Granite State Joint Bd. Textile Workers Union*, 409 U.S. 213, 216 (1972) (emphasis added).

The Supreme Court has long recognized that "the First Amendment does not confer … a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen*, 501 U.S. at 672. As the Western District of Washington explained:

> The freedom of speech and freedom of association do not trump the obligations and promises voluntarily and knowingly assumed. The other party to that contract has every reason to depend on those promises for the purpose of planning and budgeting resources. The Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken.

*Fisk*, 2017 WL 4619223, at *5.

Thus, courts uniformly and correctly have rejected the same First Amendment argument Appellant raises here. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 964 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 423 (2021) (rejecting First Amendment challenge to payment of union dues subject to cancellation during an annual opt-out window because "the First Amendment does not preclude the enforcement of legal obligations that are bargained for and self-imposed under state contract law." (internal quotations and citations omitted)); *Belgau*, 975 F.3d at 950 ("[t]he First Amendment does not support Employees' rights to renege on their promise to join and support the union. This promise was made in the context of a

contractual relationship between the union and its employees. When legal obligations . . . are self-imposed, state law, not the First Amendment, normally governs.") (internal quotations and citations omitted); *Bennett v. AFSCME Council 31*, 991 F.3d 724, 731 (7th Cir. 2021), *cert. denied*, 142 S. Ct 424 (2021) (rejecting claim for return of dues paid pursuant to union membership agreement because "[t]he First Amendment … does not, without more, render unenforceable any legal obligations or restrictions that [] are self-imposed through a contract.") (internal quotations and citations omitted); *see* note 2, *supra* (citing additional cases).

### B. Union Appellees Were Not Required to Procure a Special "Waiver" of Appellant's First Amendment Rights

Appellant attempts to evade her voluntary decision to join the unions and sign the Membership Agreement by claiming that her voluntary contract was not a sufficient "waiver" of her First Amendment rights. A.8-15, ¶¶ 5; 29; 32-33; 51-52. Appellant devotes much of her argument on this point to the purported new waiver standard created by *Janus*. Appellant is simply incorrect because no such heightened waiver standard was created by *Janus* for voluntary union membership agreements. *Janus* solely addressed a requirement that nonmembers pay mandatory agency fees as a condition of employment and "in no way created a new First Amendment requirement for union members before dues are deducted pursuant to a voluntary agreement." *Belgau*, 975 F.3d at 952; *see also Bennett*, 991 F.3d at 733 ("Having consented to pay dues to the union, regardless of the status of her membership,

Bennett does not fall within the sweep of *Janus*'s waiver requirement."); *Hendrickson*, 992 F.3d at 962 n.18 ("*Janus* did not create a new waiver requirement").

The passage from *Janus* that plaintiffs, including Appellant, have erroneously relied upon in support of a waiver argument concerns workers who did *not* join a union and who did *not* affirmatively authorize dues deductions:

> Neither an agency fee nor any other payment to the union may be deducted from a *nonmember's* wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. *By agreeing to pay, nonmembers are waiving their First Amendment rights*, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

138 S. Ct. at 2486 (emphasis added, citations omitted). This passage simply made clear that public employers cannot presume that nonmembers wish to pay union fees in the absence of affirmative consent.[5] Appellant's affirmative, voluntary decision

---

[5] The four cases cited in the *Janus* decision's waiver passage, 138 S. Ct. at 2486, involved litigants who had not affirmatively undertaken any obligations, much less entered into bilateral contracts to perform those obligations in exchange for consideration, and concerned whether waiver could be found solely from the plaintiff's inaction. *See Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938) (addressing whether pro se defendant had properly waived his Sixth Amendment right to counsel by failing to ask that counsel be appointed); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-80 (1999) (rejecting argument that State had "constructively" waived its sovereign immunity by engaging in activity that Congress decided to regulate); *Knox v. SEIU Local 1000*, 567 U.S. 298, 315 (2012) (nonmembers of union could not be deemed to consent to union political assessment through their silence); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 142-44 (1967) (libel defendant could not be deemed to have waived through silence, libel defense the Supreme Court later recognized in *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

to join the NHEU and NYSUT, and to affirmatively commit to paying dues in exchange for membership rights, is not analogous to the compulsory nonmember payments addressed in *Janus*. As held in *Bennett*, a former union member, like Appellant, is not a "non-member as the term was used in *Janus*. Read as a whole, *Janus* distinguished between those who consented to join a union – as [plaintiff] did – and those who did not." *Bennett*, 991 F.3d at 732.

It also bears emphasis that courts routinely give effect to agreements between private parties to undertake actions that the First Amendment would preclude the government from compelling private parties to take, and the courts do so without applying a heightened waiver standard, and without any requirement that such agreements include "necessary language", "magic words" or *Miranda*-style disclaimers. *See, e.g., Perricone v. Perricone*, 292 Conn. 187, 210 n. 22 (2009) (even "assum[ing] … an agreement between private parties to restrict speech implicates the first amendment," a voluntary "agreement [that] clearly sets forth the restrictions' is enforceable without the need for "the talismanic recital of the words 'first amendment'"); *id.* at n. 21 (collecting additional cases); *Nat'l Abortion Ctr. for Med. Progress*, 685 Fed. App'x 623, 626 (9th Cir. 2017) (private nondisclosure agreements were enforceable without containing any express references to parties'

First Amendment rights). There is no basis for treating agreements between private associations, like the Unions, and their voluntary members differently.[6]

Even if *Janus* required "clear" and "compelling" evidence of Appellant' affirmative consent to have membership dues deducted until the authorization was revoked in a specific manner, the Membership Agreement satisfies any such requirement. The Membership Agreement expressly states Appellant's unambiguous intent to "request and voluntarily authorize my employer to deduct an amount equal to the regular monthly dues uniformly applicable to members of [the NHEU] and remit that amount to [the NHEU]" and that Appellant understood "that this authorization and assignment is not a condition of employment and shall remain in effect, regardless of whether I am or remain a member of the union, for a period of one year from the date of this authorization and shall automatically renew from year to year . . . ." A.27. Thus, the agreement provides "clear" and "compelling" evidence that Appellant agreed to pay the dues that she paid. Even where a

---

[6] The contractual waiver cases that Appellant relies upon (Br. 31) are not on point here. *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1094 (3d Cir. 1988), involved an agreement with the government, not a contract between private parties. In *Fuentes v. Shevin*, 407 U.S. 67 (1972), a state replevin statute did not comport with procedural due process, and the Supreme Court held only that the "fine print" in a consumer contract did not provide sufficiently "clear" consent to that constitutionally invalid replevin procedure. 407 U.S. at 95. Here the deduction of dues is entirely consistent with the First Amendment and Appellant's agreement to the deductions was clear. In *D.H. Overmyer Co. Inc. of Ohio v. Frick Co.*, 405 U.S. 174 (1972), the Supreme Court did not hold that a constitutional waiver analysis applies to private contracts. Rather, the Court reasoned that, even "assum[ing]" that a waiver standard applied to determine whether a party consented to a collection procedure that would otherwise *violate due process*, the parties' contract constituted such a waiver. *Id.* at 185-86 (emphasis added).

constitutional waiver analysis is required, affirmative consent is a valid "waiver" in most situations. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973).

### C. *Janus* Did Not Create a First Amendment Right to Disregard Pre-*Janus* Membership Agreements

Appellant further asserts that her Membership Agreement is invalid because it was signed prior to *Janus*. Br. 29. According to Appellant, she could not have "waived" her First Amendment rights before those rights were recognized in *Janus*. But *Janus* was a case about nonmembers, not public employees who voluntarily chose to become union members. *Janus* did not recognize a right to become a union member without undertaking the financial obligations of membership. *See, e.g., Belgau*, 975 F.3d at 951 ("*Janus* does not address this financial burden of union membership."); *Bennett*, 991 F.3d at 732 ("*Janus* said nothing about union members who, like Bennett, freely chose to join a union and voluntarily authorized deduction of union dues, and who thus consented to subsidizing a union."); *Hendrickson*, 992 F.3d at 962 ("*Janus* addressed only whether non-union members could be required to pay agency fees.").

Nor does "[a] change in law that alters the original considerations for entering an agreement … allow retroactive invalidation of the agreement." *Bennett*, 991 F.3d at 731 (rejecting the same argument Appellant makes here). *See, e.g., Brady v. United States*, 397 U.S. 732, 757 (1970) (subsequent legal developments do not allow criminal defendants to renege on plea agreements); *Dingle v. Stevenson*, 840

F.3d 171, 175-76 (4th Cir. 2016) (same); *Coltec Indus. v. Hobgood*, 280 F.3d 262, 277 (3d Cir. 2002) (applying same reasoning in civil context). Thus, as the Third Circuit recognized in *Fischer*, "a 'swelling chorus of courts' has recognized that *Janus* does not extend a First Amendment right to avoid paying union dues' when those dues arise out of a contractual commitment that was signed before *Janus* was decided." *Fischer v. Governor of N.J.*, 842 F. App'x 741, 753 (3d Cir. 2021), *cert. denied sub nom. Fischer v. Murphy*, 142 S. Ct. 426 (2021) (quoting *Belgau*, 975 F.3d at 951); *see also, e.g., Hendrickson*, 992 F.3d at 961. Those decisions are all correct.

### D. Appellant's Membership Agreement is a Valid Contract

Finally, Appellant argues that her Membership Agreement did not satisfy the First Amendment because it was not an enforceable contract under New York State law. Br. 37-39. Appellant's theory is that, because she was a union member when she signed her 2018 Membership Agreement, her union membership did not provide consideration for her promise to pay dues for a specified time. *Id.*

Appellant's argument about consideration might provide the basis for a state law claim against the Unions, but it does not give rise to a First Amendment claim. *See LaSpina v. SEIU Pennsylvania State Council*, 985 F.3d 278, 281, 288 (3d Cir. 2021) (a dispute about the validity of a membership agreement would create, "if anything, a state court claim," not a federal Section 1983 claim). Moreover, Appellant does not contend that she had a pre-existing, contractual right to *perpetual*

union membership on the same terms, such that the Unions could not change the terms of union membership going forward.

In any event, Appellant's argument fails on its own terms: Under New York law, "[a]n agreement … to change or modify … any contract [or] obligation … shall not be invalid because of the absence of consideration, provided that the agreement … changing [or] modifying … such contract [or] obligation … shall be in writing and signed by the party against whom it is sought to enforce the change [or] modification." N.Y. Gen. Oblig. Law § 5-1103 (2012). Appellant signed her Membership Agreement. A.27. As such, New York law did not require that Appellant receive "new" consideration. *See Kumpf*, 2022 WL 17155847, at *12 (rejecting the same argument Appellant raises here).

Appellant also erroneously asserts that the rights and benefits of membership could not provide consideration because "the [Membership] Agreement expressly states it 'is not a condition of [Appellant's] membership.'" AOB 39. That statement appears only in the paragraph of the Membership Agreement by which Appellant agreed that providing her mobile telephone phone number would constitute consent to receive telephone calls and text messages. The Membership Agreement states that providing "*this consent* is not a condition of my membership." A. 27 (emphasis supplied). As such, there is no merit to Appellant's argument about lack of consideration.

## II.   THE DEDUCTION OF UNION DUES THAT APPELLANT AUTHORIZED DID NOT VIOLATE HER DUE PROCESS RIGHTS

Count II of Appellant's Complaint alleged that the deduction of union dues from her paychecks was a violation of procedural due process.  A.16-18.  Appellant failed to state a viable due process claim because she voluntarily joined the NHEU and NYSUT and voluntarily authorized those post-resignation deductions.

To state a claim under Section 1983 for a violation of procedural due process, a plaintiff must: (1) identify a liberty or property interest, (2) show that the state has deprived the plaintiff of that interest, and (3) show that the deprivation was effected without due process.  *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994); *see also McMenemy v. City of Rochester*, 241 F.2d 279, 285-86 (2d Cir. 2001).  The liberty and property interests alleged in Count Two were Appellant's interest in not financially supporting the unions.  Appellant was not deprived, in the constitutional sense, of the portion of her wages subject to deduction for union dues because she voluntarily joined the NHEU and NYSUT and agreed to pay the dues.  "[I]f one voluntarily relinquishes some property or liberty interest, then she cannot have a claim for a due process violation because no state official deprived her of the interest."  *McBeth v. Himes*, 598 F.3d 708, 723 (10th Cir. 2010).  For example, public employees cannot resign from their jobs voluntarily and then allege they were

deprived of a protected property interest in retaining that job. *See, e.g., Ulrich v. City and Cnty. of S.F.*, 308 F.3d 968, 974-76 (9th Cir. 2002).

That being so, public employees who voluntarily agree to pay money to their union (or any other private entity) have not been deprived of liberty or property in a manner implicating due process concerns. Courts uniformly and correctly have rejected the same due process claim that Appellant raised here. *See Wagner v. Univ. of Wash.*, 2020 WL 5520947 at *5 ("The answer, as … every Court examining the question has concluded, is that [plaintiff] did not suffer the deprivation of a liberty or property interest as she voluntarily assented to Union membership and deduction of union dues."), *aff'd*, 2022 WL 1658245, at *1 (9th Cir. May 25, 2022) ("Wagner was not deprived of a constitutionally protected property interest when the University deducted and remitted her voluntarily authorized dues."); *Molina v. Pa. Soc. Serv. Union*, __ F. Supp. 3d __, 2020 WL 2306650, at *11 (M.D. Pa. May 8, 2020) (rejecting procedural due process claim by union member because "[h]is union dues were deducted from his paycheck to satisfy his contractual obligation"); *Crouthamel v. Walla Walla Pub. Sch.*, 535 F. Supp. 3d 1025, 1035-36 (E.D. Wash. 2021) (same reasoning); *Marsh v. AFSCME Local 3299*, 2020 WL 4339880, at *10 (E.D. Cal. July 28, 2020), *subsequent order*, 2021 WL 164443, at *6 (E.D. Cal. Jan. 19, 2021) ("Plaintiffs were not deprived of a protected liberty or property interest when the government made deductions *authorized* by plaintiffs themselves.")

(emphasis in original); *Kumpf*, 2022 WL 17155847, at *14 (holding based on materially indistinguishable facts that "in adhering to the [plaintiff's] signed authorization's terms," the school district did not "deprive[] Plaintiff of a protected liberty or property interest in violation of the Fourteenth Amendment").

Indeed, even if the School District had made a mistake in deducting dues for Appellant (and it did not), the deductions would not have violated procedural due process because the State provides post-deprivation remedies. *See Ochoa v. Pub. Consulting Grp., Inc.*, 48 F.4th 1102, 1110-11 (9th Cir. 2022).[7]

## III. APPELLANT'S SECTION 1983 CLAIMS AGAINST THE UNIONS WERE ALSO PROPERLY DISMISSED FOR LACK OF STATE ACTION

The Court should also affirm the dismissal of Appellant's Section 1983 claims against the Unions on the independently sufficient ground that the Unions' alleged conduct does not qualify as state action. *See* A.39-45. More than seven million public employees are union members,[8] and public employers process millions of voluntary dues deductions every payroll period. Under Appellant's erroneous state action analysis—which other courts uniformly have rejected—every dispute

---

[7] Appellant argues that she "also raised a procedural due process claim based on Appellee's failure to provide the procedures outlined in *[Chicago Teachers Union v.] Hudson,* 475 U.S. 292 [(1996)]. Br. 45 n.32. But *Hudson* was a First Amendment case, not a due process case, and *Hudson* addressed compulsory nonmember agency fees, so the decision has no application here. *See infra* at Point V.

[8] Bureau of Labor Statistics, Economic News Release, Union Members Summary (January 19, 2022), available at https://www.bls.gov/news.release/union2.nr0.htm

between a public employee and a union about a dues deduction authorization would become cognizable in federal court.   State labor boards and state courts are entirely competent to resolve such disputes.

### A.     Section 1983 Claims Against Private Parties are Viable Only if the Private Party's Conduct Qualifies as State Action

"[M]ost rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982).  *See also Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (First Amendment addresses government restraints on freedom of speech and association, not private conduct); *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (Due Process Clause does not apply to private conduct).   A plaintiff seeking to sue a private party under Section 1983 must therefore show that the private party's "conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State," i.e., that the private party's conduct is "state action." *Lugar*, 457 U.S. at 936-37; *see also Belgau*, 975 F.3d at 946-49.  If the conduct is not attributable to the state, then there is no "state action," no constitutional violation, and no viable Section 1983 claim.  *See Annunziato v. The Gan, Inc.*, 744 F.2d 244, 249 (2d Cir. 1984) ("[I]n cases arising under § 1983, the 'under color' of law requirement has consistently been viewed in the same manner as the 'state action' requirement under the Fourteenth Amendment.").

Courts apply the two-element test established in *Lugar* to determine whether a plaintiff states a Section 1983 claim against a private party:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010) (*quoting Lugar*, 457 U.S. at 937).

### B. Appellant's Allegations About the Unions Did Not Establish the State Action Necessary for a Section 1983 Claim

Neither element of the *Lugar* test is satisfied here. First, the essence of Appellant's claims against the Unions is that the Unions purportedly failed to secure proper authorization from Appellant for post-resignation dues deductions. Such claims fail under *Lugar*'s first element because the "source of the alleged constitutional harm' is not a state statute or policy but the particular private agreement between the union and [its members]." *Belgau,* 975 F.3d at 947 (citations, internal quotation marks omitted).

Just as the plaintiffs in *Belgau* claimed that their agreements with their union were invalid because they "were signed without a constitutional waiver of rights" (*id.* at 947), Appellant contends that her Membership Agreement is invalid because it failed to include such a waiver. Br. 28-39. The source of the harm at issue is the

alleged inadequacy of the private agreement, not "the state's authority to deduct dues according to a private agreement." *Id.* at 946–47

Second, the claims against the Unions also fail to satisfy the second element of the *Lugar* test because the Unions are not state actors. As a general matter, "[u]nions are not state actors; they are private actors." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (*citing Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323-24 (2d Cir. 2002) (rejecting argument that a public employee union was a state actor). Here, as in *Belgau*, a public employer's purely ministerial role of deducting union dues authorized by employees is not sufficient to turn the Unions into state actors. *Belgau*, 975 F.3d at 947–48 & n.2; *accord Wright*, 48 F.4th at 1122–25 & n.6; *Hoekman*, 41 F.4th at 977-78; *Oliver*, 415 F. Supp. 3d at 612; *Kumpf*, 2022 WL 17155847, at *7-8; *Todd*, 571 F. Supp. 3d at 1030.

The state action cases that Appellant relies upon are not analogous to this case. In the agency fee cases (*see* Br. 20 n. 11), the government required nonmembers to provide financial support to unions; it did not merely implement employees' own voluntary choices. Likewise, the wage garnishment cases (*see* Br. 26-27), involve the government's seizure of disputed property. In *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478 (1988) (Br. 21-22), the executrix was appointed by the probate court and essentially served as the court's agent in providing notice

to creditors.  In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) (Br. 22-23), the litigant exercising a racially discriminatory peremptory challenge was, among other things, performing "a traditional function of government" by selecting the jury, "a quintessential governmental body."  500 U.S. at 624.  None of these cases support Appellant's position.

Rather, the most that can be said about the government's involvement in deducting dues is that the government responds to the voluntary actions of private parties.  "That the State responds to such actions by adjusting" its own conduct (e.g., by deducting dues) "does not render it *responsible* for those actions."  *Blum*, 457 U.S. at 1005 (emphasis in original) (holding that state's adjustment of Medicaid benefits levels in response to private medical decisions about appropriate level of care did not make the private decisions into state action); *see also, e.g., McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524-26 (3d Cir. 1994) (private accrediting body's withdrawal of accreditation from hospital residency program was not "state action," even though state agency based its approval of residency programs on that body's accreditation decisions).

## IV.  APPELLANT'S SECTION 1983 CLAIMS AGAINST THE DISTRICT WERE ALSO PROPERLY DISMISSED BECAUSE THE DISTRICT WAS FOLLOWING THE MANDATE OF STATE LAW

The Court should also affirm the dismissal of Appellant's claims against the District for the independently sufficient reason that her allegations did not establish

an actionable District policy, as required under *Monell* for a Section 1983 claim. *See* A.45-52. The Taylor Law required the District to deduct the dues that Appellant had authorized, and local governments cannot be held liable under Section 1983 for following the mandate of state law. *Vives,* 524 F.3d at 353 & n.4.

Appellant urges that the Taylor Law actually prohibited the deductions at issue here. Br. 42. The relevant statutory language provides that: "The right to … membership dues deduction shall remain in full force and effect until … (i) an individual employee revokes membership in the employee organization in writing in accordance with the terms of the signed authorization." N.Y. Civ. Serv. Law § 208-1(b). According to Appellant, this provision prohibited the District from deducting dues after the Unions accepted her resignation from membership, notwithstanding that "the terms of [Appellant's] signed authorization" provided for deductions to continue until an annual window period.

Appellant misinterprets the relevant language in the Taylor Law, which was not intended to invalidate standard union dues authorization agreements.[9] The sentence at issue addresses "membership dues deduction"—not any of the other rights or obligations of membership—and the phrase "revokes membership … in accordance with the terms of the signed authorization" refers back to the cancellation

---

[9] The relevant Taylor Law language was added in April 2018. *See* 2018 Sess. Law News of N.Y. Ch. 59 (S. 7509-C), at Part RRR.

of those same authorized membership dues deductions. Appellant could not "revoke[] membership … in accordance with the terms of the signed authorization" without paying dues until the agreed-upon window period.

Equally to the point, in labor law parlance, the term "membership" can refer to the obligation to pay membership dues, even if the employee has "resigned" from other aspects of membership. *See, e.g., Pattern Makers v. NLRB*, 473 U. S. 95, 106 n. 16, 108 (1985) (explaining that, under the National Labor Relations Act's union-security provision, the requirement of "membership" means the payment of dues, so the employee was not prohibited from resigning and thereby avoiding union discipline); *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 33 (1998) ("[T]his Court has held that an employee can satisfy § 8(a)(3)'s "membership" condition merely by paying to the union an amount equal to its initiation fees and dues."). Appellant did not "revoke[] membership," in this sense of the term "membership," until she validly cancelled her authorization to pay membership dues.

Appellant's contrary interpretation of the Taylor Law is implausible because it would require that, to be enforceable, dues authorization agreements must restrict members from resigning if they wish to do so, rather than just restrict when the membership dues authorization itself can be revoked. Not only would that interpretation invalidate the commonplace, pre-existing dues authorizations the 2018 New York Legislature would have intended public employers to honor, but it would

be contrary to the longstanding common law rule that individuals can resign from a voluntary association "as [they see] fit subject of course to any financial obligations due and owing the group with which [they were] associated." *NLRB v. Granite State Joint Bd. Textile Workers Union*, 409 U.S. at 216. Thus, the District was required by the Taylor Law to continue the Appellant's deductions until her written authorization was revoked in accordance with its terms, and the District cannot be held liable under Section 1983 for complying with its legal obligations.

In any event, even if the District's implementation of its employees' voluntary union dues authorization agreements is local policy, rather than a mandate of state law, such a policy is entirely constitutional. *See supra* at Point III(B), pp. 27.

## V. THE DISTRICT COURT CORRECTLY DISMISSED APPELLANT'S CLAIMS FOR DECLARATORY RELIEF.

Finally, Appellant argues that the district court incorrectly dismissed her claims for declaratory relief because the district court misunderstood the relief she was seeking. Br. 43-45. Appellant does not dispute that her claims for prospective relief regarding dues deductions failed to present a live controversy because the deductions already had ended before she filed this lawsuit.[10] Appellant argues, however, that she can still seek "her rights under [*Chicago Teachers v.*] *Hudson,* 475

---

[10] A plaintiff must establish Article III jurisdiction for each form of relief sought. *Davis v. FEC,* 554 U.S. 724, 734 (2008). A plaintiff lacks standing to seek prospective relief unless the plaintiff establishes a real and immediate threat of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

U.S. at 307 n. 20—including an accounting of how the Unions spent her money."
Br. 22.

Appellant's argument makes no sense because because *Hudson* concerned nonmembers who were required to pay mandatory agency fees before the Supreme Court's decision in *Janus*. Under pre-*Janus* law, public employers could require employees who were not union members to pay for union expenses germane to collective bargaining but not for political and ideological expenses. *Hudson* required that agency fee payors must be provided with procedural protections to ensure that they were not required to pay for non-chargeable expenses in violation of their First Amendment rights. *See* 475 U.S. at 302-310. By contrast, there is no First Amendment right to become a union member without assuming the full financial obligations of membership, *Kidwell*, 946 F.2d at 297-302, so there is no predicate for *Hudson*-type procedures here. *See Smith v. Serv. Emps. Int'l Union, Loc. 668*, 566 F. Supp. 3d 251, 268 (M.D. Pa. 2021) (explaining why *Hudson* procedures do not apply to union members).

Appellant also asserts that she should be allowed to seek what is "effectively" declaratory relief "for past harm" by asserting a claim for nominal damages. Br. 43 (citing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021)). Even if Appellant were correct in conflating declaratory relief and nominal damages (and she is not), her

allegations failed to state a viable Section 1993 claim against the Unions or the

District, so her claim for declaratory relief "for past harm" would be meritless.

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.


Dated:  February 22, 2023          Respectfully submitted,

ALTSHULER BERZON LLP     ROBERT T. REILLY
Scott A. Kronland
177 Post Street, Suite 300       /s/ Andrea A. Wanner
San Francisco, California 94108   Andrea A. Wanner
(415) 421-7151               Of Counsel
skronland@altber.com         800 Troy-Schenectady Road
                                 Latham, New York 12110
                                 (518) 625-1985
                                 andrea.wanner@nysut.org

*Attorneys for Defendants-Appellees*
*New York State United Teachers and*
*New Hartford Employees' Union*

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND
<u>TYPE STYLE REQUIREMENTS</u>

This brief complies with the type-volume limitation of FED. R. APP. P. 32(2)(7)(B) because this brief contains 8249 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. R. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14 font, Times New Roman.

Dated:  February 22, 2023                    ROBERT T. REILLY

<u>/s/ Andrea A. Wanner</u>
Andrea A. Wanner
Of Counsel
800 Troy-Schenectady Road
Latham, New York 12110
(518) 625-1985
andrea.wanner@nysut.org